RECEIVED
APR - 2 2012
TONY R. MOORE, CLERK
BY_____
DEPUTY

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

ANN S. RHODES

versus

WHATABURGER RESTAURANTS, LP

CIVIL ACTION NO. 11-0552
JUDGE TOM STAGG

# MEMORANDUM RULING

Before the court are two motions for summary judgment filed by the defendants. The first motion for summary judgment was filed by Whataburger Restaurants, LP ("Whataburger"). See Record Document 37. The second motion for summary judgment was filed by Cintas Corporation ("Cintas") and Discover Property and Casualty Insurance Company ("Discover"). See Record Document 43. For the reasons set forth below, both of the motions for summary judgment are **GRANTED**.

## I. BACKGROUND

On February 28, 2010, Ann Rhodes ("Rhodes") went to Whataburger Store Number 516, a fast-food restaurant, located on Benton Road in Bossier City, Louisiana with her son, Mabry Elliot ("Elliot"). Rhodes alleges that as she was leaving the restaurant, she "tripped and fell over the ruffled edge of a rug." Record Document 1. Rhodes contends that the rug "did not lie flat to the floor." Id.

On February 22, 2011, Rhodes filed suit in the 26th Judicial District Court in and for the Parish of Bossier, alleging that she suffered significant injuries and damages due to her fall. See id.[1] Whataburger removed the case to this court and, thereafter, filed a third party complaint against Cintas, who delivered the mat at issue,[2] and its insurer, Discover. See Record Document 17. Rhodes added these same two parties as defendants in an amended complaint. See Record Document 20. Cintas and Discover filed an answer and a third party complaint and counterclaim against Whataburger. See Record Document 35. Thereafter, Whataburger filed the instant summary judgment motion, seeking dismissal of all of Rhodes's claims. See Record Document 37. Cintas and Discover later filed a motion for summary judgment, also seeking dismissal of all of Rhodes's claims. See Record Document 43.

---

[1] On July 29, 2011, Elliot, as curator for Rhodes, filed plaintiff's First Amended Petition, wherein he alleged: "Additionally, plaintiff was interdicted on May 5, 2011[,] and, thus, her Curator needs to be substituted as the proper party plaintiff on behalf of Ann S. Rhodes." Record Document 18. This request was granted. For ease and continuity, the court will continue to refer to the plaintiff as Rhodes.

[2] Whataburger store manager, Diedre Whitley, testified that the store floor mats, including the one at issue, were delivered in a series of three, and were replaced every Tuesday by Cintas. See Record Document 37, Ex. B at 10-11. The mat at issue was delivered on Tuesday, February 23, 2010. See id., Ex. B-1. The fall occurred five days later.

## II. LAW AND ANALYSIS

A. **Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). The Fifth Circuit has cautioned that "conclusory allegations, speculation, and

---

[3]The court notes that the newly amended Rule 56 requires that there be "no genuine **dispute** as to any material fact," but this change does not alter the court's analysis. Fed. R. Civ. P. 56(a) and advisory committee's note (emphasis added).

3

unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).

**B.  Negligence Analysis.**

**1.  Applicable Law.**

Louisiana Revised Statute 9:2800.6 governs a negligence action against a merchant for damages resulting from injuries sustained in a slip and fall accident. See Kennedy v. Wal-Mart Stores, Inc., 733 So.2d 1188 (La. 1999). Under paragraph A of that statute, a merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. The duty includes a reasonable effort to keep the premises free of any hazardous conditions that reasonably might give rise to damages. See id.

In slip and fall cases governed by this statute, the plaintiff's burden of proof is set forth in paragraph B, which provides as follows:

> B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, **the claimant shall have the burden of proving**, in addition to all other elements of his cause of action, all of the following:
>
> (1) The condition presented an unreasonable risk of harm to

>the claimant and that risk of harm was reasonably foreseeable.
>
>(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
>
>(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

La. R.S. 9:2800.6(B) (emphasis added). With respect to the second element above, i.e., whether the defendant had actual or constructive notice of the condition that allegedly caused the plaintiff to slip and fall, the definitions section of Louisiana Revised Statute 9:2800.6 regarding constructive notice provides as follows:

>(C)(1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

La. R.S. 9:2800.6(C)(1).

The Louisiana Supreme Court has held that the phrase "such a period of time," as used in paragraph (C)(1), constitutes a temporal element that must be shown by a plaintiff in a slip and fall case. Louisiana Revised Statute 9:2800.6 does not allow for

the inference of constructive notice absent some showing of this temporal element. See Kennedy, 733 So.2d at 1190 (citing White v. Wal-Mart Stores, Inc., 699 So.2d 1081 (La. 1997)). A plaintiff must make a positive showing of the existence of the condition prior to the fall. See id. The merchant who is sued, on the other hand, is not required to make a positive showing of the absence of the existence of the condition prior to the fall. See id.

Although there is no bright line time period relative to the duration of the condition, there is imposed upon the plaintiff "a prerequisite showing of some time period." Kennedy, 733 So.2d at 1190-91. The time period need not be specific in minutes or hours. However, if a plaintiff merely shows that the condition existed, without any additional showing that it existed for "some" period of time, she has not satisfied her burden of proving constructive notice. See id.

In Kennedy, the Louisiana Supreme Court reversed the judgments of both the trial court and the Third Circuit Court of Appeal that had been in favor of the plaintiff. The plaintiff in Kennedy slipped on a puddle of water when he was about three or four feet from the checkout lanes in a Wal-Mart store. He argued, and the lower courts agreed, that Wal-Mart had constructive notice because it was raining and the water was on the floor just a few feet from the customer service podium. The Louisiana Supreme Court disagreed, noting that "plaintiff presented absolutely no evidence as to the length

of time the puddle was on the floor before his accident." Kennedy, 733 So.2d at 1191. He therefore did not carry his burden under Louisiana Revised Statute 9:2800.6 of proving Wal-Mart's constructive knowledge of the condition.

### 2. Application Of The Law To The Facts.

#### a. Unreasonable Risk Of Harm.

First, Rhodes has failed to establish that the mat upon which she allegedly tripped and fell constituted a dangerous or negligent condition, specifically by possessing a wrinkle or a fold prior to her fall. By his own admission, Elliot, who was with Rhodes at the time of her fall, never saw a wrinkle or fold in the mat before his mother fell. See Record Document 37, Ex. A.

> Q: You didn't see any problems with that mat prior to your mom falling?
>
> A: Well, I'm not looking at a mat, I'm walking straight, you know, just like I would if I walked in here, I didn't really look at the mat.
>
> Q: In fairness to that response, you didn't see anything wrong with the mat before your mom fell?
>
> A: No.
>
> Q: And as you interacted with that mat in terms of you entering and exiting, you didn't notice anything wrong with that mat?
>
> A: Me, myself?
>
> Q: Yes, sir.

> A: No, I didn't notice at that time.

Id., Ex. A at 41-42. Store manager, Diedre Whitley ("Whitley"), also testified that no customer or Whataburger employee reported any issue, problem, defect with the mat prior to Rhodes's fall. See id., Ex. B at 83, 90 and 97. Whitley further testified that, despite her numerous inspections of the area and the mat, she did not notice any problems with the mat until after Rhodes's fall:

> Q: Did you ever notice any problems with the mat before she had fallen?
>
> A: No.
>
> Q: Did you ever notice any waves in the mat before she had fallen?
>
> A: No.
>
> . . .
>
> Q: At some point you inspected the rug with the intention of seeing what was going on with it; is that correct?
>
> A: Right.
>
> . . .
>
> A: It was, it seemed to have a couple of waves on it. I rolled it up and put it to the back, okay, and that's where it stayed.
>
> Q: Okay. When did you roll the rug up? I'm sorry. When did you examine the rug in terms of, let's you know, you were called over, she's on the rug, EMS is called, EMS leaves, the end of your shift, when did you?

8

> A: I went after they got her out I went over there. The rug was folded over more when I went over there to it and I just picked it up and took it to the back.

Id., Ex. B at 22-23 and 95-96. Whitley was also asked about when she first noticed the wave in the mat.

> Q: In terms of the first responders who helped Ms. Rhodes while she was on the floor, did they come in through those double doors?
>
> A: Yes.
>
> Q: Did they bring a stretcher in through those double doors?
>
> A: Yes.
>
> Q: Would they have been running that stretcher over the mat?
>
> A: Yes, I would think. They have to.
>
> Q: And you didn't see a wave in it until after everyone had left?
>
> A: Right.
>
> Q: After the first responders had come in and out?
>
> A: Yes, after everybody had gone.

Id., Ex. B at 98-99. Stacey Lamette, an employee at Whataburger, also testified that during the multiple times she walked by and saw the mat that day, there were no obvious problems with the mat. See id., Ex. C at 25-26 and 39-40. Furthermore, the employee for Cintas who delivered the mat at issue, Rodney Hardy ("Hardy"), stated

in his affidavit that "it was [his] practice to check and ensure upon delivery that the mats being delivered were not ragged or worn and, when placing mats, [he] always ensured that the mats were placed flat." Record Document 43, Ex. 1 at 2. Hardy also stated in his affidavit that "if a mat appeared to be ragged or worn or would not lay flat, or there were any other noticeable defects, that mat would not have been delivered to Whataburger." Id.

Rhodes has not provided any evidence that there was a wrinkle or fold in the mat prior to the fall. A mat by the doors of a retail establishment is by no means an anomalous situation or one that is inherently dangerous. To the contrary, mats are placed in such locations as precautionary measures to protect customers against drips or splashes of water carried into a store by other customers or the elements. See Borruano v. City of Plaquemine, 720 So.2d 62, 65 (La. App. 1st Cir. 1998). Moreover, courts have held that the failure to place mats inside an entranceway that can become slippery during a rainfall constitutes negligence. See Attaway v. Alberstons, Inc., 174 F. App'x 240, 242 (5th Cir. 2006) (citing Bergeron v. Southeastern La. Univ., 610 So.2d 986, 988-89 (La. App. 1st Cir. 1992)). Rhodes has simply failed to offer any competent summary judgment evidence to establish that any unreasonably dangerous condition existed, much less that any alleged dangerous condition caused her to trip and fall.

The record shows that Rhodes has not alleged or provided any evidence showing a rip or tear in the mat, frayed edges, a curl or wrinkle or fold, or any condition related to the mat prior to her fall other than mere allegations that it was defective prior to the fall, which is clearly insufficient to meet her[4] burden. See Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). Rhodes does, however, spend the majority of her argument focusing upon photographs of the mat taken on November 21, 2011, over twenty months <u>after</u> her fall. Rhodes argues that "the rug, as shown in the photographs does not lay flat and is incapable of laying flat." Record Document 41 at 2. Rhodes further asserts that "[t]he rug had multiple visible ripples when it was inspected by Mr. Elliott [sic] shortly <u>after</u> his mother fell." Id. at 7 (emphasis added). These statements underscore the fallacy in Rhodes's legal argument. That the mat contained visible ripples in it over twenty months <u>after</u> Rhodes's fall is insufficient to prove that the rug presented an unreasonable risk of harm to Rhodes on the day of her fall. Furthermore, that Elliot saw visible ripples <u>after</u> his mother's fall is also insufficient to prove that the rug presented an unreasonable risk of harm. See Attaway, 174 F. App'x at 242;

---

[4] Rhodes appears to attempt to shift the burden of proof to the defendants, in clear contravention of the language Louisiana Revised Statute 9:2600.6. As is plainly stated in the statute and reiterated in Louisiana caselaw, the claimant has the burden of proving an unreasonable risk of harm and notice and the merchant is not required to make a positive showing of the absence of the existence of the condition prior to the fall. See Kennedy, 733 So.2d at 1190.

11

Kennedy, 733 So.2d at 1190; White, 699 So.2d at 1084. The mere fact that Rhodes tripped on a weather related floor covering in the defendant's store, standing alone, does not establish a condition that presented an unreasonable risk of harm. Furthermore, in his supplemental affidavit, Cintas employee Hardy stated that he reviewed the photographs produced by the plaintiff and that "[t]hese photographs do not accurately depict the condition of either mat that [he] delivered to Whataburger on February 23, 2010, including the mat that [he] placed at the doorway where the alleged accident occurred." Record Document 46, Ex. 1 at 2. He further stated:

> On February 23, 2010, when I personally delivered the subject mat and place it at the Whataburger's [sic] doorway where the alleged accident occurred, the mat was not in the condition depicted in Plaintiff's attached photographs. Plaintiff's attached photographs do not depict the condition of the subject floor mat on February 23, 2010. Rather, on February 23, 2010, the mat (which I personally delivered) properly laid flat on the floor and did not appear to have any defects.

Id. The court therefore finds that Rhodes has failed to carry her burden of coming forward with evidence showing that the mat constituted a dangerous or negligent condition or that Whataburger or Cintas breached its duty to keep its floors or mat in a reasonably safe condition that did not pose an unreasonable risk of harm to Rhodes.[5]

---

[5] Rhodes also attempts to distort the true issue before the court by asserting that "this is not a '*wrinkled mat*' case where an otherwise non-defective mat gets kicked or moved and then becomes wrinkled." Record Document 41 at 9 (emphasis in

### b. Notice.

In the alternative, even if the mat did present an unreasonable risk of harm to Rhodes, she has failed to show that Whataburger or Cintas either created or had actual or constructive notice prior to her fall of the condition presented by the mat. As in Kennedy and White, the plaintiff in the present matter has not produced any evidence whatsoever to satisfy the temporal element of Louisiana Revised Statute 9:2800.6 that the mat was in a condition that posed an unreasonable risk of harm for any length of time. The photographs taken over twenty months after the fall certainly do not help the plaintiff meet her burden of making "a positive showing of the existence of the condition prior to the fall." Kennedy, 733 So.2d at 1190 (emphasis added). That the mat contained visible ripples in it over twenty months after Rhodes's fall is also insufficient to prove that Whataburger or Cintas had constructive notice of the alleged defect in the mat. Furthermore, that Elliot saw visible ripples after his mother's fall is also insufficient to prove constructive notice. The law as to this issue could not be clearer. See Attaway, 174 F. App'x at 242; Kennedy, 733 So.2d at 1190; White, 699

---

original). Rhodes instead asserts that "[t]his is a case involving a defective mat at the time it was delivered for use." Id. However, Rhodes presents no evidence whatsoever in support of this allegation. Instead, as mentioned, she simply relies upon a photo taken over twenty months after the fall, which clearly does not illustrate that the mat was defective at the time it was delivered and Rhodes has no other evidence to refute the testimony regarding the condition of the mat prior to the fall.

So.2d at 1084.

Nor has Rhodes offered any evidence showing that a Whataburger or Cintas employee caused the condition or had actual knowledge of its presence prior to her fall. To the contrary, and as already mentioned, Elliot admitted in his deposition that he did not see any fold or wrinkle in the mat <u>before</u> his mother's fall. <u>See</u> Record Document 37, Ex. A. In addition, Elliot repeatedly testified that he did not actually see his mother fall and, thus, did not see what caused his mother's fall:

> Q: You didn't see your mom fall that day?
>
> A: I did not.
>
> Q: How did you know something was wrong?
>
> A: I turned around, she's laying on the ground and, of course, I heard a disturbance, the actual fall, and I turned around and she's wrapped up in this rug . . . .
>
> . . .
>
> Q: Can I ask you, at that moment when you turned around and you saw your mother down there, you had no idea why she fell?
>
> A: Well, immediately I noticed that she's tangled up in the rug, yeah. I'm like, what in the heck have you done - done this for, you know, one of those type reactions.
>
> Q: The question in your mind was, how did that happen?
>
> A: Yeah, sort of, just - you know, in passing.

Q: And at that moment, you didn't really know how that happened, how that mat had gotten --

A: No, no.

Q: -- wrapped around her?

. . .

Q: Do you have any idea --

A: This is all tightened up, I mean, I don't know exactly how close it is. I haven't gone back over there, you know, to look at it, but what I surmised happened is the ripples in the rug is right here and her foot went under it and when she started to pick her foot up she lost her balance and then pivoted and either hit that partition with her head or hit the wall with her head and her leg either hit that corner or it just snapped from the weight being on it. I'm not sure exactly how that happened.

. . .

Q: So the whole mat went with your mom?

A: I think so. I think, from what I remember, or the corners did. This corner here, which is where her foot went under and it lapped over the left leg, I think, from her falling. I'm not sure, because I didn't see her fall, I mean, I just saw her on the ground.

. . .

Q: You didn't see the ripples before your mom fell?

A: No, I did not. Of course, you've got to realize I'm not looking down.

Record Document 37, Ex. A at 33-35, 39-41 and 48.

Although the plaintiff attempts to meet her burden in this regard by relying upon

her son's observations of the mat after the fall and his opinion that it was worn or defective prior to the fall, this is not sufficient to indicate that Whataburger or Cintas had any notice of an alleged defect in the mat. In sum, Rhodes's evidence consists only of her son's speculation and conclusory statements, and photographs taken over twenty months after the fall occurred. The record shows that she has failed to satisfy **her burden** under Louisiana Revised Statute 9:2800.6 of coming forward with positive evidence proving that the condition of the mat posed an unreasonable risk of harm that was present on Whataburger's floor for a sufficient period of time to impute constructive knowledge to Whataburger or Cintas of its existence. See Kennedy, 733 So.2d at 1190. The evidence that is before the court indicates that there were no issues, problems or complaints regarding the mat prior to Rhodes's fall. See Record Document 37, Exs. B and C (Depositions of Whitley at 62, 94 and 98 and Lamette at 18 and 27) and Record Document 46, Ex. 1 (Supplemental Affidavit of Hardy). Thus, the plaintiff has not made a positive showing of the requisite temporal element. See Wilson v. Wal-Mart Stores, Inc., 125 F. App'x 566 (5th Cir. 2005).

### III. CONCLUSION

Based on the foregoing analysis, the defendants' motions for summary judgment are **GRANTED**. See Record Document 37 and 43. All claims by the plaintiff against all defendants are **DISMISSED WITH PREJUDICE**.

A judgment consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 2nd day of April, 2012.

JUDGE TOM STAGG